## Roche v. Roche.

(Decided May 28, 1920.)

### Appeal from Kenton Circuit Court.

1. Trusts—Resulting Trusts—Consideration for Deed.—Under the provisions of section 2353, Kentucky Statutes, there is no resulting trust, in favor of the one paying the consideration for a deed, unless the grantee to whom the deed was executed was named as such without the knowledge or consent of the person paying the consideration, or unless the grantee, in violation of some trust, purchased the land and had the deed executed to him with the consideration furnished by another.

2. Trusts—Resulting Trusts—Consideration for Deed.—In a suit by the one furnishing the consideration to have a trust declared in his favor because the grantee took the deed in his own name, without the consent of the plaintiff, it is not necessary to allege or prove either fraud or mistake in the execution of the deed, except in so far as it is necessary to show that the deed was executed to the grantee without the knowledge or consent of the plaintiff.

3. Trusts—Resulting Trusts—Evidence.—In order to establish such a trust the evidence of the facts necessary to create it must be clear and convincing.

4. Trusts—Consideration for Deed.—Evidence examined in this case and held that it is sufficient to support the finding of the chancellor that the wife furnished the consideration for the deed, and that it was executed to her husband without her knowledge or consent, and that he in consequence held the land as her trustee.

JOHN T. MURPHY and R. J. COLVERT for appellant.

JAMES C. WRIGHT and C. W. YOUNGBLUT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 15, 1893, the appellee and plaintiff below, Maria J. Roche, and John Roche were married in Kenton county, Kentucky. At the time of their marriage the plaintiff was between forty-five and fifty years of age, while her husband was perhaps a few years younger.

Neither of them owned any property at the time, and the husband worked at different jobs in the neighborhood, sometimes on the farm, and sometimes at other employment as a common laborer. It is not shown that he ever accumulated anything, or owned any property, except perhaps a few articles of personal apparel.

The undisputed proof shows that some time prior to 1906 the plaintiff inherited from her father, John Singleton, $2,050.00, and that a short while thereafter she inherited from her uncle $1,926.77. On March 31, 1906, the parties purchased a small farm in Kenton county, containing about sixty acres, from John W. Stephens. The agreement to purchase seems to have been effected through A. E. Foster, a real estate agent having the land in charge for the purpose of selling, and plaintiff's husband, John Roche. The deed was prepared so as to convey the land absolutely to the husband, but the evidence shows conclusively that the consideration was paid entirely by the wife, some of which was in cash at the time, and the last payment was the discharge of a mortgage lien debt on the land, which perhaps had been placed on it by Stephens. After the purchase of the farm the plaintiff and her husband resided upon it until the latter's death, which occurred near the end of the year 1917. The husband left no will, nor did he leave surviving him any descendants or any collateral heirs except the appellant and defendant, who is a brother.

On March 8, 1918, plaintiff brought this suit against the brother (appellant Malachi Roche), alleging that he was claiming to own the land by inheritance from her deceased husband; that the latter held title to the land as the trustee of plaintiff because she furnished the consideration for its purchase, and that the deed was taken to him without her knowledge or consent, and that under the provisions of section 2353 of the Kentucky Statutes, a trust resulted in her favor whereby her husband held the legal title as her trustee, she being the beneficial owner. She prayed that the deed be so construed, and that the defendant be required to convey the land to her, and upon his failure to do so that the court direct its master commissioner to make such conveyance.

The answer consisted of a general denial of the averments of the petition, and upon submission the court sustained plaintiff's petition and granted her the relief prayed for, and to reverse that judgment the defendant prosecuted this appeal.

In addition to the above recited facts, it also appears without contradiction that plaintiff paid all the taxes due on the land after the deed was obtained, and looked after, attended to and paid for all improvements thereon, as well as purchased all of the farming tools and stock necessary to run the farm. She was industrious and energetic, and sold vegetables, butter, eggs and other products from the farm, and seems to have been the moving spirit in its operation. On numerous occasions the husband stated to neighbors and others not related to plaintiff that he had no interest in the farm, or anything upon it; that his wife had paid for all of it, that she owned it, and in substance that he had nothing to do with it. In his last illness he was confined to his bed some days and he was very much concerned about the execution of a will; but no one was present who could write it, and his neighbors who were in attendance upon him, at the request of his wife, did not encourage him in the desire, because she stated at the time that it made no difference, since everything belonged to her any way.

Plaintiff testified that she had no knowledge as to how the deed was executed, but under the provisions of section 606 she was perhaps incompetent to give such testimony. The grantor, Stephens, attempts to say in his examination in chief that plaintiff did know to whom the deed was executed, but on cross-examination he contradicts himself, and he is also contradicted as to how and the person by whom the deed was prepared. All of the other witnesses present at the time, including the clerk who took the acknowledgment, state that the deed had been previously prepared with the name of the husband as grantee therein, but how this came to be done, or who prepared it, does not clearly appear. Other facts and circumstances are testified to going to establish the fact that the husband did not claim any interest in the property but that the wife did, and that she did not know to whom the deed was executed.

It is earnestly insisted that the demurrer filed to the petition should have been sustained because it contains no allegation that it was executed through fraud or mistake, and the case of Fitzpatrick v. Roark, 179 Ky. 504, and cases therein referred to are relied on in support of this contention. We have carefully read those cases and do not find them applicable to the facts of this case. The general rule is that a writing may not be reformed without allegation and clear proof of fraud or mistake

in its execution, but even this rule does not apply where a deed absolute on its face is sought to be converted into a mortgage. Vaughn v. Smith, 148 Ky. 531; Leibel v. Tandy, 146 Ky. 101; Stone v. Middleton, 144 Ky. 284; Hobbs v. Rowland, 136 Ky. 197, and Eastern Gulf Oil Co. v. Lovelace, 188 Ky. 238. But the petition in this case does not seek to reform a deed for fraud or mistake. Its only purpose is to show that the nominal grantor was in fact only a trustee for the person who furnished the consideration for the deed. At common law all that was necessary in order to convert the grantee into a trustee for another was to establish the fact that the latter furnished the consideration. Neel v. Noland, 166 Ky. 455; May v. May, 161 Ky. 114; Foushee v. Foushee, 163 Ky. 524. Section 2353, *supra*, changed this rule of the common law so as to prevent a resulting trust in favor of the one furnishing the consideration, except (a) where the vendee takes the deed "in his own name without the consent of the person paying the consideration," or (b) "where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person."

This court, as will be seen from the cases, *supra*, and others referred to in them, has uniformly held that when either of the conditions (a) or (b) exist, a trust will result, notwithstanding the statute. It is true that the cases hold that the evidence authorizing the establishment of a trust must be clear and convincing. The facts in the cases, *supra*, relied on by appellant are so entirely different from those in this case that we hardly deem it necessary to point them out. Suffice it to say that in some of them the absolute deed sought to be declared a trust had been executed for as much as seventy years, and in all of them it was shown that the wife who sought to establish the trust was fully acquainted with the fact that the deed conveyed the land to the grantee. In some of the cases there were contradictions in the testimony upon the issues involved and the trial court found against the one seeking to establish the trust, and under the well recognized rule that the findings by the chancellor will not be disturbed unless they are against the preponderance of the evidence, this court affirmed the judgment. In this case we have an opposite finding by the chancellor, and the testimony, as well as the circumstances in the case, very clearly indicates that plaintiff was deceived as to how the deed from Stephens had

been executed. The learned judge who tried the case filed an opinion in which a concise as well as correct summary of the evidence appears, and recognizing our inability to improve upon it we have concluded to adopt a portion of his statement as a part of this opinion. After finding that plaintiff had furnished and paid the entire consideration for the land, the court adds:

"While this is not sufficient to establish the trust, it is further testified by Maria J. Roche that it was understood that the property was to be conveyed to her, and that she believed it had been until after the death of her husband, when she then ascertained that the husband while acting as her agent had taken the title to himself, which if true, constituted a breach of trust, and by reason of which he would be deemed a trustee for her in the land. The plaintiff was not a competent witness to testify to that fact. Aside, however, from her own evidence to that effect, the deposition of witness after witness is without controversy that the husband always and repeatedly stated that the land was his wife's; that in matters pertaining to it, with reference to selling it, or removing from it, recognized her dominion as to it, declaring that he could not do it because his wife owned the place. I have no doubt but that the husband knew and understood that the title to the farm was in him, for it is uncontroverted in the evidence that for several days preceding his death he was appealing to his neighbors who visited him to get some one to write his will, saying that everything belonged to his wife, and he wanted her to have it, and as it appears that he had little if any property other than the title to this land, it would seem evident that he knew both of the fact and effect of the property being in his name. But that very evidence introduced a fact which is very convincing that the plaintiff did not know it, for it is shown that when being appealed to to have some one procured to write his will, which was done in the presence of plaintiff, the neighbor, who from repeated statements of the husband believed and thought that the land belonged to the wife, asked the wife if that (the making of the will) was necessary, to which the wife responded no, and not to bother about it. If the wife had known that the title to the property was in her husband, it would seem to be greatly contrary to the nature of people under such circumstances, knowing that her husband was desiring to make a will giving her all the property, for her to have treated the matter

so lightly and have declared it to be unnecessary, when the effect of her husband's death without such will would be to leave her at an advanced age without any estate with which to support herself. The only reasonable explanation of that act upon her part is that she believed that the property was hers, that the making of such a will would be for that reason the doing of a vain and useless thing, and therefore declared it unnecessary two or three days prior to his death, when he was desirous of procuring his will to be made.

"The entire evidence in the record tending in any way to show that the plaintiff knew that the title had been conveyed to her husband consists of the statement of Mr. Stephens, from whom the property was purchased, who stated that at the time of the transfer of the property the deputy county clerk who took the acknowledgment of himself and wife to the deed, asked both the plaintiff and her husband to whom they desired the deed made, and that the plaintiff said she desired it made to her husband. It is evident in the opinion of the court that the witness's recollection about that matter is somewhat at fault. He started out by saying that he understood that it was to be made that way, and in his statement of his recollection about the matter transpiring there seems uncertain and hazy. He testified that the clerk drew the deed. The plaintiff in rebuttal stated that the conversation did not take place. The deputy clerk who took the acknowledgment testified that he did not draw the deed, and never drew one in his life, that the deed was fully prepared when presented to him for acknowledgment; that there were no blanks in the deed for the name of the grantee or grantees to be filled, that it was already filled just as the deed appears now; that he has no recollection of asking either of the persons there how they wanted the deed made, that there would be no occasion for him asking such a question and that he is convinced that he did not make such inquiry, or that the plaintiff answered as stated. The sale of the property was made through a real estate agent, and he testified that the deed was fully prepared before it was taken to the clerk's office to be acknowledged, and that there was no uncertainty about who the deed was made to that would cause the clerk to make such inquiry; that he has no recollection about the matter of the sale, except that he sold the property; that he does not recollect any inquiry about the deed at all; that all the clerk did was

to take the acknowledgment; that the clerk did not make the deed, or fill any blanks in the deed; that he did not know who made the deed, but that Mr. Roetkin was the attorney in the matter. Mr. Roetkin was not introduced as a witness.

"The court is of the opinion from the evidence that the husband did hold the property in trust for the plaintiff, and that she paid the purchase money, and that the title was taken by her husband without her knowledge and consent, and a trust results under such circumstances under the express provisions of the statute."

The testimony being sufficient to support the judgment of the court, it is therefore affirmed.