BARRON v. PHELPS et al.

Court of Appeals of Kentucky.

Feb. 16, 1951.

As Modified on Denial of Rehearing
May 4, 1951.

Fritz Krueger, Somerset, for appellant.
H. C. Kennedy, Somerset, for appellee.

SIMS, Justice.

The parties to this appeal will be referred to as plaintiff and defendant.

Plaintiff, Hurtis Phelps sued W. E. Barron for $700.00 compensatory and $1000 punitive damages for wrongfully cutting timber from plaintiff's land in Pulaski County. Defendant's answer and counter-claim denied wrongfully cutting the timber and sought to recover $3,000 for lumber and logs which it is alleged plaintiff wrongfully deprived defendant. A jury trial resulted in a verdict for plaintiff in the sum of $200 and from the judgment awarding plaintiff that sum and dismissing the counter claim, defendant appeals.

Two grounds are relied upon for reversal: 1. incompetent evidence was admitted; 2. the instructions were erroneous.

On June 2, 1943, plaintiff and his wife entered into a written contract with defendant and Fred Price wherein the latter purchased a tract of timber in Pulaski County from the former for $250.00 cash. The contract provided the purchasers had until June 2, 1947, to remove the timber and that they might set a mill on the land and make a road anywhere thereon except in the seller's garden. Price sold his part of the contract to defendant and is not involved in this litigation.

Defendant failed to remove the timber by June 2, 1947, and he and plaintiff got into a dispute over an extension of the time for the performance of the contract. Defendant testified that shortly before the contract expired he told plaintiff he would not be able to remove all the timber before June 2, 1947, and the latter orally agreed to an extension until Dec. 2, 1947, in consideration of defendant employing plaintiff to work in cutting the timber and of defendant furnishing plaintiff sufficient lumber to construct a barn 30' x 32'; that he employed plaintiff who worked for him in the timber until July 21, 1947, when, without warning, plaintiff filed this action and enjoined defendant from further cutting timber or entering on the land.

Defendant further testified that subsequent to their agreement for an extension of the orginal contract, plaintiff asked him to cut and furnish him lumber for a two room house instead of the barn, to which defendant agreed; then plaintiff wanted the size of the house increased to one of three rooms, which defendant refused. Later plaintiff asked that the house be increased to four rooms and defendant again refused. But he subsequently agreed

to cut plaintiff a pattern for a four room house and had his son present a written contract to plaintiff, which the latter refused to sign and brought this action.

Plaintiff admitted he agreed to extend the original contract to Dec. 2, 1947, but says the consideration was that defendant would furnish him lumber for a four room house, which defendant refused to do and he brought this suit. Plaintiff admitted working in the timber with defendant up until the day before he filed suit.

■ There were thirty-seven logs on the mill-yard when the suit was filed and defendant admitted he removed seven of these. The court over defendant's objection and without plaintiff qualifying as a witness as to the value of the logs and being able to identify the character of only four of the logs taken, was permitted to say the seven logs were worth $7 each. Also, plaintiff over defendant's objection was permitted to testify his land was damaged $50 by the water washing gullies on it after the logs were snaked over the land. This latter bit of evidence was not as definite as it might have been regarding the damage to the land, and defendant complains plaintiff did not qualify as a witness as to the value of his land. However, plaintiff stated the snaking of the logs over high ridges caused the land to wash and his farm worth $50 less by reason of gullies having been washed in it. While plaintiff did not give the specific value of his land before it was washed, he did say it was worth $50 less thereafter. It is generally held that the owner of real property is a competent witness as to its value. 32 C.J.S., "Evidence", § 545 (3), p. 305. Defendant failed to bring out on cross-examination that plaintiff was not conversant with the value of his farm. This he should have done if he had any doubt about plaintiff being familiar with its value. Paintsville Nat. Bank v. Conley, 257 Ky. 425, 78 S.W.2d 313.

■ We have a different proposition as to plaintiff's testimony that the seven logs taken by defendant were worth $7 each. As stated above, he did not identify the character of but four of the logs, nor did

he testify that he was familiar with the value of logs. A farmer might be presumed to know the value of his land but when he testifies as to the value of timber he must show he is qualified to speak on the subject. This, plaintiff did not do. The owner of property having no knowledge of its value is an incompetent witness to testify as to its value. 32 C.J.S., "Evidence", § 545 (2), p. 313; Shields v. Parsons, 230 Ky. 143, 18 S.W.2d 961; Courier-Journal & Louisville Times Co. v. Crossland, 300 Ky. 361, 188 S.W.2d 428, 429.

■■ Complaint is made by defendant of the form of the first instruction given by the court, as well as the fact it allowed plaintiff to recover $100.00 for each item when the proof showed plaintiff's damage on the logs taken was $49 and the damage to his land was $50. Patently, the instruction should have limited plaintiff's recovery on these two items to $49 and $50 respectively. Plaintiff did not produce any testimony that he was damaged by the thirty trees being cut and left on his land; therefore, he can recover nothing on this item. His entire recovery under the evidence should have been limited to $99. It cannot be said that the de minimis non curat lex rule applies here because the recovery was 100% in excess of plaintiff's own proof of his damage.

■ The form of the first instruction is subject to criticism since it emphasises the evidence of plaintiff that the extension contract was to be in writing, while defendant's evidence was that he and plaintiff entered into an oral contract for the extension and later he tendered a written contract which plaintiff refused to sign. The first instruction in substance should read:

"If the jury believe from the evidence that after the expiration of the first contract on June 2, 1947, the parties did not agree upon the extension of same, and the defendant, his servants or employees wrongfully and without right went upon plaintiff's land while he had no contract so to do and cut and removed seven trees from the plaintiff's farm, and damaged the land by changing roads or caused gullies

and washes to come into same by snaking logs over plaintiff's farm, the law is for the plaintiff and you will so find. Unless you so believe you will find for the defendant."

"If you find for plaintiff under the first instruction, you will award him the fair market value of the 7 trees taken not to exceed $——— per tree, or $———; and award him such further sum as you may believe from the evidence represents the difference, if any, in the fair market value of his farm immediately before and immediately after changing said roads or making gullies by snaking logs over his land by defendant, his agents, servants or employees, if they did so do, not to exceed $———. Plaintiff's whole recovery, if any, will not exceed $———."

The second instruction given by the court is erroneous as it merely told the jury if they believed the time in the original contract was extended, then they should find for defendant. This instruction did not provide for any damages on defendant's counter-claim and his proof showed plaintiff appropriated all but 1000 feet of the 80,-000 feet of logs cut by defendant after June 2, 1947, and that the logs were worth $15 per 1000 feet. Defendant offered an instruction on his theory of the case but it was erroneous in providing that if plaintiff worked for him in cutting the timber or had a verbal contract with defendant to extend the time, then the jury should find for the defendant. The fact plaintiff worked for defendant in cutting this timber after the expiration of the contract is strong evidence that the parties had extended the term of the original contract but it did not within itself show an extension thereof; nor did it estop plaintiff from insisting there was no such extension, since plaintiff testified he and defendant attempted to negotiate an extension of the original contract but never reached an agreement thereon.

 Where a party offers an erroneous instruction upon a proper issue, it is the duty of the court to prepare a correct instruction in lieu of the defective one. Stanley's Instructions to Juries, § 13, p. 19; Prudential Ins. Co. of America v. Sisson, 276 Ky. 506, 124 S.W.2d 739; Murphy v. Harmon, 291 Ky. 504, 165 S.W.2d 11. On another trial the court will instruct on defendant's theory of the case in substance:

"If the jury believe from the evidence that at the expiration of the first contract on June 2, 1947, the parties agreed upon an extension of same, and defendant acting under such extension entered upon the land and cut 80,000 feet of logs and that plaintiff forbad and prevented him from removing all of same, except 1000 feet, then the law is for defendant on his counter-claim and you will find for him a sum which will fairly compensate defendant for the number of feet of logs belonging to him which plaintiff appropriated, if he did so appropriate any of said logs, not to exceed 79,-000 feet at not exceeding $15 per thousand feet, or not exceeding $1185. Unless you believe the parties by agreement extended the original contract, you will find against defendant on his counter-claim."

 It is insisted by plaintiff this appeal is moot because defendant did not supersede the judgment on appeal, and plaintiff caused an execution to issue under which the land was sold and the judgment was satisfied. The law is that failure to supersede does not prevent the losing party from taking an appeal. The only effect of a supersedeas is to stay proceedings pending the appeal. If no supersedeas is issued, the successful party in the circuit court may have the judgment enforced. Should the judgment be reversed after execution has been done on it, the successful party on appeal must look to the execution creditor to make him whole. Civil Code of Practice, § 747; Smith v. Smith, 295 Ky. 50, 173 S.W. 2d 813; Lowery v. Madden, 308 Ky. 342, 214 S.W.2d 592. Appellant's motion to dismiss the appeal as moot is overruled.

The judgment is reversed for proceedings consistent with this opinion.